**IN THE COURT OF APPEALS OF IOWA**

No. 25-0880
Filed August 6, 2025

**IN THE INTEREST OF M.B.,**
**Minor Child,**

**S.B., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Clinton County, Kimberly Shepherd, Judge.


        A father appeals the juvenile court's termination of his parental rights. **AFFIRMED.**


        J. David Zimmerman, Clinton, for appellant father.

        Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

        Taryn McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, attorney and guardian ad litem for minor child.


        Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

A father[1] appeals the juvenile court's termination of his parental rights, arguing that the State did not present clear and convincing evidence for the grounds for termination under Iowa Code section 232.116(1)(d), (e), and (f) (2025); that termination is not in the child's best interests; and, alternatively, that the juvenile court should have applied exceptions to termination. We affirm termination of the father's parental rights to the child.

## I. Background Facts and Proceedings

The child was born in January 2020 and first came to the attention of the Iowa Department of Health and Human Services in September 2022. Following an initial report that one the child's siblings was being improperly supervised, the department received another report that the child witnessed his mother "assault [the father] during a domestic dispute" and "that the [mother and father] were using cocaine and ecstasy" while "drinking and supervising the [child]." The father was "not involved in the [life] of the [child]" at this time. These reports led to the child being first adjudicated as a child in need of assistance (CINA) in May 2023. The child was removed from the mother's care in January 2024 but has never been under the father's care.

Following removal, the father expressed interest in being "considered for placement of the child." The department offered services to address the circumstances leading to adjudication: "Solution Focused Meeting, therapy,

---

[1] The juvenile court also terminated the mother's parental rights to the child, and she does not appeal.

substance abuse treatment, drug treatment, Solution Based Counseling, BHIS, case management, fictive kin and relative placements, and referral to community resources." The father testified to being employed and having stable housing, but he has never provided financial support for the child outside of occasionally bringing "some toys and some clothes" to his visits with the child.

The father has only completed one department-scheduled drug test since adjudication—a February 2025 report showing he tested positive for cocaine. The father has cited numerous reasons for being unable to drug test, including having to work overtime and "dealing with the loss of some family members." Although he provided his own independently collected drug test showing negative results, that independent drug test was collected within the same month as his positive drug test. He has not taken any drug tests since.

The father started substance-use treatment but missed the last two weeks of February and had not participated through the date of a March 19 department case report. A department worker testified that he has not been in contact with the substance-use-treatment service provider since that time. He has not moved past supervised visits with the child. The case worker could provide no timetable for moving past supervised visits and agreed during her testimony the father is not "addressing the goals outlined in the case plan."

The State petitioned to terminate the father's parental rights to the child in February. The termination hearing was held on March 26, 2025, and the juvenile court terminated the father's rights to the child on May 14, 2025. The father now appeals.

## II. Standard of Review

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citation omitted). We are not bound by the juvenile court's findings of fact, but we do give them weight, especially when they involve witness credibility determinations. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

## III. Discussion

We use a three-step analysis in reviewing the juvenile court's termination of parental rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We analyze whether (1) a statutory ground for termination has been established; (2) termination is in the children's best interest; and (3) any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

### a. Grounds for Termination

When the juvenile court terminates a parent's rights under more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Iowa Code section 232.116(1)(d) authorizes termination of parental rights when each of the following have occurred:

> (1) The court has previously adjudicated the child to be a [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a [CINA] after such a finding. This paragraph shall not be construed to require that a finding of sexual abuse or neglect requires a finding of a nonaccidental physical injury.
> (2) Subsequent to the [CINA] adjudication, the parents were offered or received services to correct the circumstance which led to

the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The father only contests the second element. He incorrectly states the child was adjudicated in need of assistance "not due to issues relating to the father" and provides a single sentence response in support of his argument, claiming he "was actively engaged with his service provider and substance abuse treatment." The father was offered substance-use treatment which he attended briefly and, according to the department case worker's testimony, has not been in contact with his counselor since March. He has not taken a drug test since January.

The juvenile court adjudicated the child as in need of assistance due in part to "concerns that [the father was] using cocaine." The father's subsequent drug test proved this concern to be accurate. The only evidence the father provides in support of his utilization of services is his self-serving testimony that he plans to continue substance-use treatment and has planned for a future drug test. But as of the hearing date, services had been offered, and the father had not used them consistently enough to advance the goals of the case plan. There is no evidence in the record to suggest that the circumstances which led to adjudication (cocaine use) have been corrected. The grounds for termination have been met.

### b. Best Interests of the Child

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." *A.M.*, 843 N.W.2d at 112 (citation omitted). In considering the best interests of the child, we are to give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the

physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

And we have stated, "the child's safety and the need for a permanent home" are the primary elements of a best-interests analysis. *In re A.M.*, No. 20-0480, 2020 WL 4814170, at *4 (Iowa Ct. App. Aug. 19, 2020). A parent's past performance "may be indicative of the quality of the future care that parent is capable of providing." *See In re A.B.,* 815 N.W.2d 764, 778 (Iowa 2012) (citation omitted). Thus, "[r]ather than speculate about what the future holds for" a parent, "it is more accurate to look in the rear-view mirror and make a decision for [the child] based on what has already happened." *In re J.H.,* 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). In determining a child's best interests, "we look to the parent's past performance because it may indicate the quality of care the parent is capable of providing in the future." *Id.* (citation omitted). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.,* 815 N.W.2d at 777 (citation omitted).

The father contends that his "very strong bond with [the child]" makes termination not in the child's best interests.[2] The department case worker

---

[2] The father does not clarify whether he is arguing his bond with the child should be considered under the best-interests step or the permissive-exception-to-termination step. Because his petition would otherwise contain no best-interests argument despite a heading describing his "Issue II" as "Best Interests of the Child," and because he provided no heading for a permissive exception argument, we will consider this argument under the best-interests step. *See In re L.A.*, 20 N.W.3d 529, 534 n.2 (Iowa Ct. App. 2025) (choosing to interpret a child-parent-bond argument as a best-interests argument where a "passing reference" to

acknowledged there appears to be a bond between the child and the father and the supervised visits have gone well. But the father has not put in the efforts outside of visits necessary to care for the child on a daily basis. He still has not progressed past supervised visits due to these failures. He has not consistently attended substance-use therapy and has not provided evidence that he has ended his substance use. Not only is it clear that the child could not have been placed with the father at the time of the hearing, but there is no discernable timeline for when the child could be returned to his care in the future.

Despite the successful supervised visits, "the child has never been in the father's care or custody, and his substance-use problem has resulted in him not advancing past supervised visits with the child. These details cause us to question whether there is a significant father-child bond." *See In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025). We agree with the district court that "the bond the [child has] with [the father] is not enough to overcome the need for termination of parental rights." The father has "had two and a half years to demonstrate [he is] able to provide a safe and stable home for [the child] and [has] failed to do so." Termination is in the child's best interests.

### c. Exceptions to Termination

In connection with his bests-interests argument, the father vaguely states that, "It appeared that [the department] planned to place [the child] with an aunt and uncle." We again highlight that "passing reference" to permissive exceptions "without more is insufficient identification, presentment, and development of the

---

permissive exceptions "without more is insufficient identification, presentment, and development of the issue to avoid waiver of it").

issue to avoid waiver of it." *See id.* at 534 n.2. But even if not waived, this argument fails insofar as it is proposed as a permissive-exception argument. Section 232.116(3)(a) provides that termination is not needed if "[a] relative has legal custody of the child." The aunt and uncle do not have legal custody—the child is to be placed in "an appropriate pre-adoptive placement" and is under the legal custody of the department. Even if the child is placed with the aunt and uncle, the department will retain legal custody. Thus, the permissive exception under section 232.116(3)(a) does not apply.

**AFFIRMED.**